397 So.2d 692 (1981)
HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION, FLORIDA DIVISION and William A. Wood, Appellants,
v.
DIVISION OF PARI-MUTUEL WAGERING DEPARTMENT OF BUSINESS REGULATIONS, Florida Horsemen's Benevolent Association et al., Appellees.
No. 57951.
Supreme Court of Florida.
April 16, 1981.
*693 Gary M. Farmer of Abrams, Anton, Robbins, Resnick, Schneider & Mager, Hollywood, and Sam Spector and Cynthia S. Tunnicliff of Spector & Tunnicliff, Tallahassee, for appellants.
Jim Smith, Atty. Gen. and E. Wilson Crump, II, Asst. Atty. Gen., Tallahassee, David M. Maloney, Staff Atty., Tallahassee, and Elizabeth J. DuFresne and Linda F. Robinson of DuFresne & DuFresne, Miami, for appellees.
ALDERMAN, Justice.
Horsemen's Benevolent and Protective Association and William Wood appeal the final judgment of the Circuit Court in and for Dade County, upholding the constitutionality of section 550.2615, Florida Statutes (Supp. 1978),[1] which requires licensed *694 horse racetracks holding permits for thoroughbred horse racing in this state to deduct one percent of the total purse pool paid and to pay this amount to a horsemen's association representing a majority of the owners and trainers of thoroughbred horses stabled in Florida for a continuous twelve-month period who conduct racing at the licensee's place of business. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution (1972), and, finding section 550.2615 unconstitutional because it constitutes an invalid exercise of the state police power, we reverse.
Horsemen's Benevolent and Protective Association, Florida Division, a division of a foreign nonprofit corporation whose members are owners and trainers of thoroughbred horses stabled and raced at licensed tracks in Florida, and William Wood, a Florida resident and owner and trainer of thoroughbred horses stabled and raced at licensed tracks in Florida, brought an action for declaratory and injunctive relief seeking to have section 550.2615 declared unconstitutional and to enjoin its enforcement. Named as defendants were the Division of Pari-Mutuel Wagering, all of the horse tracks duly authorized to conduct thoroughbred horse racing and pari-mutuel wagering in Florida, and Florida Horsemen's Benevolent Association, which is a Florida corporation representing members who own, train, race, and stable thoroughbred horses within Florida. The complaint alleged that the defendant racetracks pay a sum of money called a "purse" to the owners of thoroughbred horses participating in races conducted by the tracks. This purse is separate from, and not required for, the payment of any tax, license fee, or regulatory fee to the state or any political subdivision or agency thereof. At Gulfstream racetrack, they alleged, all of the participants in each race are entitled to claim a share of the purse, and, at the other tracks, at least the first four finishers may claim a share of the purse. Alleging further that by law and custom participants in each race are entitled to claim a part of the purse, depending upon the order of finish, Horsemen's Benevolent and Protective Association and Wood claimed that they had a valid expectancy in the purses paid and urged that section 550.2615 is unconstitutional for several reasons.
Both sides stipulated that there were no material issues of fact and filed cross motions for summary judgment. Finding that Horsemen's Benevolent and Protective Association and Wood failed to overcome the presumption of constitutional validity of section 550.2615, the trial court granted defendants' motion for summary judgment.
Although it is our duty to uphold the validity of a statute in all cases where that result can be lawfully reached and although every reasonable doubt must be resolved in favor of constitutionality, we are unable to construe section 550.2615 in such a manner as to uphold its validity against the challenge that it constitutes an unlawful exercise of the state police power. Indisputably, the state, through the exercise of the police power, has the right to regulate, control, and supervise horse racing in Florida. Division of Pari-Mutuel Wagering v. Caple, 362 So.2d 1350 (Fla. 1978); State ex rel. Mason v. Rose, 122 Fla. 413, 165 So. 347 (1936). But this power must be exercised for a public purpose. State v. Lee, 356 So.2d 276 (Fla. 1978); United Gas Pipe Line Co. v. Bevis, 336 So.2d 560 (Fla. 1976). Further, the statutory enactment must be reasonably appropriate to accomplish the purposes of the act. Division of Pari-Mutuel Wagering v. Caple. In evaluating the argument advanced by Horsemen's Benevolent and Protec ve Association and Wood that section 550.2615 is an unreasonable exercise of the state police power, we must decide whether the means utilized, the enactment of section 550.2615, bears a rational or reasonable relationship *695 to a legitimate state objective, remaining cognizant of the legislature's broad range of discretion in its choice of means and methods by which it will enhance the public good and welfare. Belk James, Inc. v. Nuzum, 358 So.2d 174 (Fla. 1978); Burnsed v. Seaboard Coastline Railroad Co., 290 So.2d 13 (Fla. 1974); State ex rel. Mason v. Rose.
The asserted justifiable purpose of this enactment is the enhancement of the racing and tourist industries in Florida by encouraging the development in Florida of a year-round quality racing program by encouraging the continuous stabling of thoroughbred horses in Florida. Improvement of racing in Florida, it is contended, will enhance state revenues from racing, thereby benefiting the public generally. This purpose, asserted as justification for the enactment of section 550.2615, is a constitutionally permissible objective under the state police power. Florida Canners Association v. State, Department of Citrus, 371 So.2d 503 (Fla.2d DCA 1979). Section 550.2615, however, does not effect this intended legislative purpose.
There is no reasonable relationship between the stated objective of the statute and the form of the statute chosen by the legislature to advance this purpose. Section 550.2615 contains no provision for how the funds paid to the horsemen's association must be spent or that they must be spent in furtherance of the legitimate state objective herein advanced. It merely requires that they be spent in accordance with articles of association which may be amended at any time and which need not espouse goals consistent with the stated public purpose for the statute. This statute effectually requires payment of money to a private association to do with as it chooses. This is an unlawful exercise of the police power. State v. Lee; Liquor Store, Inc. v. Continental Distilling Corp., 40 So.2d 371 (Fla. 1949).
The only control that the Division of Pari-Mutuel Wagering has under this statute is to ensure that the monies paid to the horsemen's association are spent in accordance with its articles of association and to review the sworn statement of the officers of the association that it represents a majority of the owners and trainers of thoroughbred horses stabled in Florida for a continuous twelve-month period who conduct racing at the licensee's place of business. There is no requirement in the statute that the monies received by the horsemen's association be used for a justifiable state objective.
Accordingly, we hold section 550.2615 unconstitutional, and we reverse the judgment of the trial court.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND and McDONALD, JJ., concur.
NOTES
[1] Section 550.2615, Florida Statutes (Supp. 1978), provides:

550.2615, Distribution of certain funds to a horsemen's association. 
(1) Each licensee who holds a permit for thoroughbred horseracing in this state shall deduct from the purses required by s. 550.261 or s. 550.44, an amount of 1 percent of the total purse pool and shall pay said amount to a horsemen's association for its use in accordance with the stated goals of its articles of association filed with the Department of State.
(2) Said funds shall be payable to a horsemen's association only upon presentation of a sworn statement by the officers of the association that the horsemen's association represents a majority of the owners and trainers of thoroughbred horses stabled in Florida for a continuous 12-month period who conduct racing at the licensee's place of business.
(3) The Division of Pari-mutuel Wagering shall audit all distribution of such funds to the horsemen's association and shall promulgate rules to facilitate orderly transfer of funds in accordance with the provisions of this law.
(4) If the division finds that said funds have not been used by the horsemen's association in accordance with its state articles of association, no further funds shall be permitted to be designated for the use of the horsemen's association, and the division shall bring the matter to the attention of the Legislature.